# Exhibit A

## NOTICE OF LAWSUIT AND REQUEST
## FOR WAIVER OF SERVICE OF SUMMONS

To: Bake One Inc.

      C/O Michelle W. Johnson Attorney

      201 17th Street NW

      Suite 1700

      Atlanta, GA 30363

Munroe Foods 2 LLC d/b/a Atlanta Bread Company A lawsuit has been commenced against you. A copy of the complaint is attached to this notice. The complaint has been filed in the Superior Court for the State of Georgia in and for the County of Gwinnett and has been assigned Civil Action File Number 16-A-03472-8. This is not a formal summons or notification from the court, but rather my request pursuant to Code Section 9-11-4 of the Official Code of Georgia Annotated that you sign and return the enclosed Waiver of Service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within 30 days after the date designated below as the date on which this Notice of Lawsuit and Request for Waiver of Service of Summons is sent. I enclose a stamped and addressed envelope for your use. An extra copy of the Waiver of Service is also attached for your records. YOU ARE ENTITLED TO CONSULT WITH YOUR ATTORNEY REGARDING THIS MATTER.

If you comply with this request and return the signed Waiver of Service, the waiver will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed except that you will not be obligated to answer or otherwise respond to the complaint within 60 days from the date designated below as the date on which this notice is sent. If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Georgia Rules of Civil Procedure and then, to the extent authorized by those rules, I will ask the court to require you (or the party on whose behalf you are addressed) to pay the full cost of such service. In that connection, please read the statement

concerning the duty of parties to avoid unnecessary costs of service of summons, which is set forth on the Notice of Duty to Avoid Unnecessary Costs of Service of Summons enclosed herein. I affirm that this Notice of Lawsuit and Request for Waiver of Service of Summons is being sent to you on behalf of the Plaintiff on this 6th day of April, 2016.

Anna N. Sigida and Dale M. Irving Pro Se

## Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

## Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ **Superior**
☐ **State**

**County** GWINNETT

16   A0 3472 - 8

**Docket #** _____

**Date Filed** _____
MM-DD-YYYY

FILED IN OFFICE
CLERK SUPERIOR COURT
COUNTY GA

2016 APR -6  AM 11: 20

RICHARD ALEXANDER, CLERK

**Plaintiff(s)**
SIGIDA, ANNA N.

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

IRVING, DALE M.

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

**No. of Plaintiffs** 2 _____

**Defendant(s)**
MUNROE FOODS 2 LLC d/b/a ATLANTA

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

BREAD COMPANY INC.

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

BAKE ONE INC.

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

| Last | First | Middle I. Suffix Prefix | Maiden |
|------|-------|-------------------------|--------|

**No. of Defendants** 2 _____

**Plaintiff/Petitioner's Attorney**        ☑ **Pro Se**

| Last | First | Middle I. | Suffix |
|------|-------|-----------|--------|

**Bar #** _____

---

## Check Primary Type (Check only ONE)

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☑ Tort (If tort, fill in right column)

☐ Other General Civil Specify _____

_____

---

## If Tort is Case Type:
### (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify Violation of EPA, IIED, Loss

of Consortium

**Are Punitive Damages Pleaded?** ☑ Yes ☐ No

IN THE SUPERIOR COURT OF GWINNETT COUNTY GEORGIA

FILED IN OFFICE
SUPERIOR COURT
GWINNETT COUNTY GA

2016 APR -6 AM 11: 20

RICHARD ALEXANDER, CLERK

|  |  |
|---|---|
| ANNA N. SIGIDA and DALE M. IRVING | ) ) ) |
|  | ) COMPLAINT |
| Plaintiffs, | ) |
| vs. | )  16  A0 3472 -8 |
|  | ) |
| MUNROE FOODS 2 LLC d/b/a ATLANTA BREAD COMPANY, and BAKE ONE INC | ) ) ) ) |
| Defendants. | ) ) ) |

NOW COMES Plaintiffs Anna N. Sigida (Sigida) and Dale M. Irving

(Irving) and files this Complaint against Defendants Munroe Foods 2 LLC d/b/a

Atlanta Bread Company, and Bake One Inc. (Defendants). Upon information and

belief Plaintiffs allege these Defendants acting jointly and severally did violate the

Equal Pay Act, (EPA) codified at 29 U.S.C. § 206 (d), intentionally inflicted

emotional distress on Sigida, and this behavior caused a loss of consortium for

Sigida and Irving.

## SUMMARY

1.

In July of 2012 Sigida was offered the position of salaried assistant manager

by Defendant Munroe Foods 2 LLC d/b/a Atlanta Bread Company (Munroe) at

1

1708 Scenic Highway in Snellville Georgia. Sigida accepted the position with the stipulation she would not be expected to work more than an occasional forty-five hours per week. Upon assuming the job, Sigida was regularly scheduled for fifty hours each week. This combined with the general manager's regular practice of calling her in early meant, Sigida was working fifty-five to sixty hours each week. Two male employees Cameron Jacques and Christopher Colgate were making more per hour than Sigida, notwithstanding that the tasks performed by all three required substantially equal skill, effort, responsibility and were performed under similar working conditions.

2.

Sigida filed suit against her employer in the United States District Court for the Northern District of Georgia for violations of the Fair Labor Standards Act codified at 29 U.S.C.§ 201 et seq. Shortly after filing suit Sigida overheard the general manager advising another employee that, "Sigida will be gone soon." Thereafter the general manager on another occasion advised a different employee to issue a written warning to an employee, as "Sigida will be gone soon", and he needed to step up if he wanted her position. This behavior caused Sigida immense distress, sleeplessness, anxiety and agitation forcing her to seek medical help.

3.

2

As a direct result of Defendant's behavior Sigida was unable to perform many marital duties including but not limited to household chores, intimacy, and general companionship to her husband Irving. Defendants' behavior continued through December of 2015, when Defendant closed the store in an attempt to avoid liability for Sigida's Fair Labor Standards Act claim.

## Jurisdiction and Venue

### 4.

Jurisdiction over Plaintiffs' claims are proper in this Court pursuant to the relevant portions of the Georgia Constitution Article VI Section I., et seq. The Plaintiffs are residents of Gwinnett County, at all times relevant to this Complaint Defendant Munroe Foods 2 LLC operated its restaurant within Gwinnett County Georgia, all tortuous conduct alleged by Plaintiffs occurred within Gwinnett County Georgia. Jurisdiction of Sigida's Equal Pay Act claims are proper in this Court pursuant to 29 U.S.C. § 216(b).

## The Parties

### 5.

Anna N. Sigida is a resident of Gwinnett County Georgia with her mailing address being, 1911 Grayson Highway, Suite 8-109, Grayson, Georgia 30017.

### 6.

3

Plaintiff Dale M. Irving is the husband of Plaintiff Sigida and a resident of Gwinnett County with his mailing address being, 1911 Grayson Highway, Suite 8-109, Grayson, Georgia 30017.

7.

On information and belief, Defendant Munroe Foods 2 LLC is a limited liability company, organized in the state of Georgia with its headquarters located at 1200 Wilson Way, Suite 100, Smyrna, Georgia 30082. Defendant is qualified to do business in the state of Georgia.

8.

On information and belief Bake One Inc., maintains either actual or constructive control, oversight or direction over the operations, sales, administration and employment practices of Munroe Foods 2 LLC d/b/a Atlanta Bread Company. Service can be perfected on both Defendants by serving their registered agent Mr. Basil Couvaras at 1200 Wilson Way, Suite 100, Smyrna, Georgia 30082.

## Statement of Material Facts

9.

In January of 2008 Sigida was hired by a franchisee of Atlanta Bread Company as a hourly paid assistant manager. Throughout her employment with

4

the franchisee Sigida was paid time and a half of her regular wages for all hours
worked in excess of forty hours per week.

10.

In January of 2011 the restaurant was taken over by Munroe Foods 2 LLC
(Defendant) the franchiser. In an attempt to curb labor costs Defendant decided
that the assistant manager position should no longer be an hourly paid position but
become a salaried position.

11.

At first the position was offered to Sigida at an annual rate of $19,000.00
with a forty hour work week expectation and remaining behind until her shift was
properly ended i.e. that is her relief has arrived, her drawers had been counted,
employees who had called out were replaced and preparations for the other shift
were completed. This, Sigida was told,  would require at most, an additional five
hours per week. As this was less than Sigida was making at her hourly rate, she
declined the position.

12.

A month or so later a young lady by the name of Priscilla was hired for the
position and was offered $26,000.00. Sigida was allowing Priscilla to informally
shadow her to learn the duties of the position when Priscilla's employment was

5

terminated for, among other things, failure to attend work, failure to inform the general manager when she was not on time or totally failed to show up, inability to grasp the policies and procedures of the restaurant and insubordination.

13.

In July of 2012, the position was once again offered to Sigida at the $26,000.00 paid to Priscilla with the forty hour work week and an expectation that she would spend, at most, an extra five hours per week at work because of her additional responsibilities. Plaintiff Wife was also advised that with the new bonus structure, the bonus would also compensate for any additional time spent at work.

14.

Over the first few months Sigida noted she was regularly scheduled for a fifty hour work week which essentially meant she spent fifty-five hours each week in the restaurant. Sigida inquired of the general manager why she was working so many hours ? She was advised it was only because they were in the midst of training the team why she was being scheduled for fifty hours each week and as soon as the team lead was ready she would be working a forty hour work week.

15.

On an average day Sigida spent approximately 30 minutes doing administrative work, counting drawers, entering sales, waste and purchases into

6

pre-designed spread sheets. The rest of the day was spent preparing food, running the cash register, serving customers, putting away purchases, counting stock, cleaning, washing dishes, clearing tables, emptying trash, throwing out waste and cleaning bathrooms.

16.

On an average day Cameron Jacques spent approximately 30 minutes doing administrative work, counting drawers, entering sales, waste and purchases into pre-designed spread sheets. The rest of the day was spent preparing food, running the cash register, serving customers, putting away purchases, counting stock, cleaning, washing dishes, clearing tables, emptying trash, throwing out waste and cleaning bathrooms.

17.

On an average day Christopher Colgate spent approximately 30 minutes doing administrative work, counting drawers, entering sales, waste and purchases into pre-designed spread sheets. The rest of the day was spent preparing food, running the cash register, serving customers, putting away purchases, counting stock, cleaning, washing dishes, clearing tables, emptying trash, throwing out waste and cleaning bathrooms.

18.

7

Cameron Jacques was paid $9.50/hour and was paid an overtime premium of an additional $4.75/hour when he worked over forty hours per week. Thus, should Mr. Jacques work the same number of hours as Sigida he would make a gross wage of $593.75.

### 19.

Christopher Colgate was paid $10.00/hour and was paid an overtime premium of an additional $5.00 per hour when he works over forty hours per week. Thus, should Mr. Colgate work the same number of hours as Sigida he would make a gross wage $625.00.

### 20.

Sigida made a flat wage of $525.00/ week a $100.00 less than Mr. Colgate would make and $68.75 less than Mr. Jacques.

### 21.

Sigida, Mr. Jacques, and Mr. Colgate performed the same job, for the same employer, in the same establishment that required substantially equal skill, effort and responsibility, under the same working conditions. The only reason Sigida was paid less than her counterparts was because she was female.

### 22.

Over a period of approximately two years and three months Defendants

8

misled Sigida as to why it was necessary for her to work fifty-five to sixty hours in a week. At first it was to afford them the opportunity to get a fully trained team in place; after they had promoted Mr. Jacques to assistant manager it became, "they were grooming Sigida for a general manager spot"; next they were going to terminate Thomas Layton , the general manager, and promote her. Once Mr. Layton was terminated and the old general manager was reinstated in the position, Sigida realized she was being misled. At this point she began to demand to be scheduled for the hours promised or be paid for her overtime.

23.

Defendants then directed Sigida to the loaf manual which contained their policies. Specifically a policy which required the general manager to place the most trusted employee on salary. Schedule him/her for fifty hours per week and avoid paying him/her overtime. Realizing she had been denied her overtime pay based on Defendants' mendacity, Sigida sued Defendants in the United States District Court for the Northern District of Georgia to recover her overtime pay.

24.

Defendants then began to retaliate against Sigida in a manner which caused extreme emotional distress. This began with Defendant through its general manager advising employees that Sigida would be "gone soon", indicating a desire

9

to terminate Sigida. Suddenly Sigida was placed in a position where she had to be perfect, but also account for the imperfection of others. This coupled with the fact that the then general manager was a habitual drunkard, who when intoxicated would call the store several times an hour, curse out employees, cause them to quit mid-shift, berate Sigida on the phone made Sigida's life a living hell. Sigida was unable to sleep properly, was continuously anxious, agitated and in fear.

25.

Defendants then promoted the catering manager to general manager, she made it clear very early on she intended to complete the process of getting rid of Sigida. Initially she began to insinuate that Sigida was "stand-offish", failed to help with managing the store, and should leave if she didn't want the job. When that did not work she began to write up Sigida for fictitious violations of policies. One example is after claiming Sigida would not help with managing the store, Sigida informed her she was performing her normal daily duties and if she expected more she would have to request it. At this point the general manager created a list of job duties for Sigida. While she was handing Sigida her list of job duties, she informed her she would be issued a written warning for failing to input invoices in the system. Sigida informed the general manager she had not been requested to perform this task, at which point the manager took the list of duties

10

back and penciled in inputting invoices as a part of Sigida's job duties. The manager then wrote Sigida a warning for failing to perform this job duty.

26.

This behavior by Defendants caused Sigida further extreme emotional distress, causing Sigida to seek professional help to deal with her anxiety, agitation and sleeplessness.

27.

On January 19, 2012 Sigida gave birth to a pre-mature baby boy. During the entire period Sigida worked as a salaried assistant manager Irving was left to raise this child on his own. Sigida was unable to perform normal household chores, intimacy and be a companion to Irving. This loss of consortium caused their marriage to deteriorate to an extent to be determined by the fair and impartial conscience of a jury.

## CLAIMS FOR RELIEF

## Count I (Violation of the Equal Pay Act)

28.

Plaintiffs reassert and re-allege the allegations set forth in paragraphs 1 through 27 above, excepting those paragraphs that are inconsistent with this cause of action brought pursuant to the Equal pay Act.

11

29.

29 U.S.C. § 206(d) provides:

No employer having employees subject to any provisions of this
section shall discriminate, within any establishment in which such
employees are employed, between employees on the basis of sex
by paying wages to employees in such establishment at a rate less
than the rate at which he pays wages to employees of the opposite
sex in such establishment for equal work on jobs the performance
of which requires equal skill, effort, and responsibility, and which
are performed under similar working conditions, except where
such payment is made pursuant to (i) a seniority system; (ii) a
merit system; (iii) a system which measures earnings by quantity
or quality of production; or (iv) a differential based on any other
factor other than sex:
Provided,

    That an employer who is paying a wage rate differential in
violation of this subsection shall not, in order to comply with the
provisions of this subsection, reduce the wage rate of any
employee.

30.

By paying Cameron Jacques, a male, and Christopher Colgate, a male, in

such a manner that they earned more than Sigida, a female, Defendants violated

the EPA.

31.

Plaintiffs demand damages in an amount equal to the amount of wages lost

over the period applicable to this suit, and an equal amount in liquidated damages.

This amount will be proven at trial.

## Count II (Intentional Infliction of Emotional Distress)

32.

Plaintiffs  reassert and re-allege the allegations set forth in paragraphs 1 through 31 above, excepting those paragraphs that are inconsistent with this cause of action for the intentional infliction of emotional distress.

33.

Under Georgia law, "the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one." Metropolitan Atlanta Rapid Transit Auth. v. Mosley, 280 Ga.App. 486, 490-491(3), 634 S.E.2d 466 (2006) (citation and punctuation omitted); In assessing whether conduct is sufficiently outrageous to support an intentional infliction of emotional distress claim, we have found that conduct which occurs in the context of the victim's employment "'may produce a character of outrageousness that might otherwise not exist.'" Fayette Family Dental Care, 312 Ga.App. at 232, 718 S.E.2d 88, quoting Bridges v. Winn-Dixie Atlanta, 176 Ga.App. 227, 230(1), 335 S.E.2d 445 (1985). This rule results from the fact that the workplace "presents a hierarchy of structured

13

relationships which cannot easily be avoided" and thereby "provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition." Coleman v. Housing Auth. of Americus, 191 Ga.App. 166, 169(1), 381 S.E.2d 303 (1989) And where a defendant has engaged in a series of acts or a pervasive pattern of conduct allegedly causing emotional distress, we must view the defendant's acts cumulatively, rather than individually, when assessing their extreme and outrageous nature. See Ferman v. Bailey, 292 Ga.App. 288, 291(2)(a), 664 S.E.2d 285 (2008)

34.

Defendants by threatening Sigida's employment, taking constructive steps to terminate Sigida's employment, encouraging other employees to compete for Sigida's position, all in retaliation for Sigida enforcing her legal right to overtime compensation intentionally inflicted emotional distress on Sigida.

35.

Plaintiff demands compensatory damages in an amount to be determined by the conscience of a fair and impartial jury.

**Count III (Loss of Consortium)**

36.

Plaintiffs  reassert and re-allege the allegations set forth in paragraphs 1

14

through 35 above, excepting those paragraphs that are inconsistent with this cause of action for the intentional infliction of emotional distress.

37.

At the time of the incident Complained of in Plaintiffs' Complaint, the Plaintiffs were married and that the Plaintiffs continue to be married.

38.

As a result of the intentional and wrongful acts of the Defendants, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

39.

That all aforesaid injuries and damages were caused solely and proximately by the intentional acts of the Defendants.

40.

Plaintiffs, jointly as husband and wife, demand judgment against the Defendants, jointly and severally in an amount to be determined by the conscience of a fair and impartial jury.

## Count IV (Punitive Damages)

41.

15

Plaintiffs reassert and re-allege the allegations set forth in paragraphs 1 through 40 above, excepting those paragraphs that are inconsistent with this cause of action for punitive damages.

42.

Bake One Inc., and Munroe Foods 2 LLC d/b/a Atlanta Bread Company acted intentionally when they decided Sigida was the most trusted employee and should be placed on salary to avoid paying her overtime, misled Sigida to convince her to work additional hours without overtime compensation, paid her less than they paid her male counterparts for substantially similar work, mounted a campaign to terminate her employment when she asserted her rights and took constructive steps to terminate her employment. This behavior shows the kind of willful misconduct, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences. Accordingly, Plaintiffs are entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiffs pray for the following relief:

1. That Summons and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

2.    That Plaintiffs have a TRIAL BY JURY of all issues so triable;

3.    That Sigida recovers from Defendant an amount equal to the

      difference between her wages and that of her male comparators over

      the applicable legal period;

4.    That Sigida recovers from Defendant an amount in liquidated

      damages equal to the amount recovered as the difference between her

      wages and that of her male comparators;

5.    That Sigida recovers from Defendant compensatory damages in an

      amount to be determined by the conscience of a fair and impartial jury

      for Defendants intentional infliction of emotional distress on her;

6.    That Plaintiffs recover from Defendants compensatory damages in an

      amount to be determined by the enlightened conscience of a fair an

      impartial duties for their loss of consortium claim;

7.    That Plaintiffs recover from Defendant punitive damages in an

      amount to be determined by the conscience of a fair and impartial

      jury;

8.    That the Plaintiffs have and recover all damages to which they are

      entitled under federal and Georgia law; and

9.    That Plaintiffs have all such and other relief as this Court deems just

17

and appropriate.

Respectfully submitted this 6th day of April, 2016

By _____

Anna N. Sigida and Dale M. Irving

1911 Grayson Highway

Suite 8-109

Grayson, GA 30017

(404) 401-2172

allurom@yahoo.com

18

To: Anna N. Sigida and Dale M. Irving

    1911 Grayson Highway

    Suite 8-109

    Grayson, Georgia 30017

    I acknowledge receipt of your request that I waive service of a summons in the action of Anna N. Sigida and Dale M. Irving v. Munroe Foods 2 LLC doing Business as Atlanta Bread Company and Bake One Inc.,which is case number16-A-03472-8 in the Superior Court of the State of Georgia in and for the County of Gwinnett. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me. I understand that I am entitled to consult with my own attorney regarding the consequences of my signing this waiver. I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by the Georgia Rules of Civil Procedure. I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons. I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer is not served upon you within 60 days after the date this waiver was sent, or within 90 days after that date if the request for the waiver was sent outside the United States. This _____ day of _____, _____.

_____

Michelle W. Johnson Attorney for Munroe Foods 2 LLC

To: Anna N. Sigida and Dale M. Irving

    1911 Grayson Highway

    Suite 8-109

    Grayson, Georgia 30017

    I acknowledge receipt of your request that I waive service of a summons in the action of Anna N. Sigida and Dale M. Irving v. Munroe Foods 2 LLC doing Business as Atlanta Bread Company and Bake One Inc.,which is case number16-A-03472-8 in the Superior Court of the State of Georgia in and for the County of Gwinnett. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me. I understand that I am entitled to consult with my own attorney regarding the consequences of my signing this waiver. I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by the Georgia Rules of Civil Procedure. I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons. I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer is not served upon you within 60 days after the date this waiver was sent, or within 90 days after that date if the request for the waiver was sent outside the United States. This _____ day of _____, _____.

_____

Michelle W. Johnson Attorney for Munroe Foods 2 LLC

# NOTICE OF LAWSUIT AND REQUEST
## FOR WAIVER OF SERVICE OF SUMMONS

To: Munroe Foods 2 LLC d/b/a Atlanta Bread Company

C/O Michelle W. Johnson Attorney

201 17th Street NW

Suite 1700

Atlanta, GA 30363

Munroe Foods 2 LLC d/b/a Atlanta Bread Company A lawsuit has been commenced against you. A copy of the complaint is attached to this notice. The complaint has been filed in the Superior Court for the State of Georgia in and for the County of Gwinnett and has been assigned Civil Action File Number 16-A-03472-8.  This is not a formal summons or notification from the court, but rather my request pursuant to Code Section 9-11-4 of the Official Code of Georgia Annotated that you sign and return the enclosed Waiver of Service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within 30 days after the date designated below as the date on which this Notice of Lawsuit and Request for Waiver of Service of Summons is sent. I enclose a stamped and addressed envelope for your use. An extra copy of the Waiver of Service is also attached for your records. YOU ARE ENTITLED TO CONSULT WITH YOUR ATTORNEY REGARDING THIS MATTER.

If you comply with this request and return the signed Waiver of Service, the waiver will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed except that you will not be obligated to answer or otherwise respond to the complaint within 60 days from the date designated below as the date on which this notice is sent. If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Georgia Rules of Civil Procedure and then, to the extent authorized by those rules, I will ask the court to require you (or the party on whose behalf you are addressed) to pay the full cost of such service. In that connection, please read the statement

concerning the duty of parties to avoid unnecessary costs of service of summons, which is set forth on the Notice of Duty to Avoid Unnecessary Costs of Service of Summons enclosed herein. I affirm that this Notice of Lawsuit and Request for Waiver of Service of Summons is being sent to you on behalf of the Plaintiff on this 6th day of April, 2016.

Anna N. Sigida and Dale M. Irving Pro Se

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

## Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ **Superior**
☐ **State**

**County** GWINNETT

**Docket #** 16 A03472-8

**Date Filed** _____

FILED IN OFFICE
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA
2016 APR -6  AM 11: 20

RICHARD ALEXANDER, CLERK

MM-DD-YYYY

**Plaintiff(s)**
SIGIDA, ANNA N.

Last    First    Middle I. Suffix Prefix    Maiden

IRVING, DALE M.

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

**Defendant(s)**
MUNROE FOODS 2 LLC d/b/a ATLANTA

Last    First    Middle I. Suffix Prefix    Maiden

BREAD COMPANY INC.

Last    First    Middle I. Suffix Prefix    Maiden

BAKE ONE INC.

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

**No. of Plaintiffs** 2

**No. of Defendants** 2

**Plaintiff/Petitioner's Attorney**     ☑ **Pro Se**

Last            First            Middle I.    Suffix

**Bar #** _____

| **Check Primary Type (Check only ONE)** |
| --- |
| ☐ Contract/Account |
| ☐ Wills/Estate |
| ☐ Real Property |
| ☐ Dispossessory/Distress |
| ☐ Personal Property |
| ☐ Equity |
| ☐ Habeas Corpus |
| ☐ Appeals, Reviews |
| ☐ Post Judgment Garnishment, Attachment, or Other Relief |
| ☐ Non-Domestic Contempt |
| ☑ Tort (If tort, fill in right column) |
| ☐ Other General Civil Specify _____ |

**If Tort is Case Type:**
(Check no more than **TWO**)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify Violation of EPA, IIED, Loss of Consortium

**Are Punitive Damages Pleaded?** ☑ Yes  ☐ No

IN THE SUPERIOR COURT OF GWINNETT COUNTY GEORGIA

FILED IN OFFICE
SENIOR COURT
GWINNETT COUNTY GA

2016 APR -6  AM 11: 20

RICHARD ALEXANDER, CLERK

|  |  |  |
|---|---|---|
| ANNA N. SIGIDA and DALE M. IRVING | ) ) ) | |
| Plaintiffs, | ) ) ) | COMPLAINT  16  A 0 3 4 7 2 - 8 |
| vs. | ) ) ) | |
| MUNROE FOODS 2 LLC d/b/a ATLANTA BREAD COMPANY, and BAKE ONE INC | ) ) ) ) | |
| Defendants. | ) ) ) | |

NOW COMES Plaintiffs Anna N. Sigida (Sigida) and Dale M. Irving (Irving) and files this Complaint against Defendants Munroe Foods 2 LLC d/b/a Atlanta Bread Company, and Bake One Inc. (Defendants). Upon information and belief Plaintiffs allege these Defendants acting jointly and severally did violate the Equal Pay Act, (EPA) codified at 29 U.S.C. § 206 (d),  intentionally inflicted emotional distress on Sigida, and this behavior caused a loss of consortium for Sigida and Irving.

## SUMMARY

1.

In July of 2012 Sigida was offered the position of salaried assistant manager by Defendant Munroe Foods 2 LLC d/b/a Atlanta Bread Company (Munroe) at

1

1708 Scenic Highway in Snellville Georgia. Sigida accepted the position with the stipulation she would not be expected to work more than an occasional forty-five hours per week. Upon assuming the job, Sigida was regularly scheduled for fifty hours each week. This combined with the general manager's regular practice of calling her in early meant, Sigida was working fifty-five to sixty hours each week. Two male employees Cameron Jacques and Christopher Colgate were making more per hour than Sigida, notwithstanding that the tasks performed by all three required substantially equal skill, effort, responsibility and were performed under similar working conditions.

2.

Sigida filed suit against her employer in the United States District Court for the Northern District of Georgia for violations of the Fair Labor Standards Act codified at 29 U.S.C. § 201 et seq. Shortly after filing suit Sigida overheard the general manager advising another employee that, "Sigida will be gone soon." Thereafter the general manager on another occasion advised a different employee to issue a written warning to an employee, as "Sigida will be gone soon", and he needed to step up if he wanted her position. This behavior caused Sigida immense distress, sleeplessness, anxiety and agitation forcing her to seek medical help.

3.

2

As a direct result of Defendant's behavior Sigida was unable to perform many marital duties including but not limited to household chores, intimacy, and general companionship to her husband Irving. Defendants' behavior continued through December of 2015, when Defendant closed the store in an attempt to avoid liability for Sigida's Fair Labor Standards Act claim.

### Jurisdiction and Venue

4.

Jurisdiction over Plaintiffs' claims are proper in this Court pursuant to the relevant portions of the  Georgia Constitution Article VI Section I., et seq. The Plaintiffs are residents of Gwinnett County, at all times relevant to this Complaint Defendant Munroe Foods 2 LLC operated its restaurant within Gwinnett County Georgia, all tortuous conduct alleged by Plaintiffs occurred within Gwinnett County Georgia. Jurisdiction of Sigida's Equal Pay Act claims are proper in this Court pursuant to 29 U.S.C. § 216(b).

### The Parties

5.

Anna N. Sigida is a resident of Gwinnett County Georgia with her mailing address being, 1911 Grayson Highway, Suite 8-109, Grayson, Georgia 30017.

6.

3

Plaintiff Dale M. Irving is the husband of Plaintiff Sigida and a resident of Gwinnett County with his mailing address being, 1911 Grayson Highway, Suite 8-109, Grayson, Georgia 30017.

7.

On information and belief, Defendant Munroe Foods 2 LLC is a limited liability company, organized in the state of Georgia with its headquarters located at 1200 Wilson Way, Suite 100, Smyrna, Georgia 30082. Defendant is qualified to do business in the state of Georgia.

8.

On information and belief Bake One Inc., maintains either actual or constructive control, oversight or direction over the operations, sales, administration and employment practices of Munroe Foods 2 LLC d/b/a Atlanta Bread Company. Service can be perfected on both Defendants by serving their registered agent Mr. Basil Couvaras at 1200 Wilson Way, Suite 100, Smyrna, Georgia 30082.

## Statement of Material Facts

9.

In January of 2008 Sigida was hired by a franchisee of Atlanta Bread Company as a hourly paid assistant manager. Throughout her employment with

4

the franchisee Sigida was paid time and a half of her regular wages for all hours worked in excess of forty hours per week.

10.

In January of 2011 the restaurant was taken over by Munroe Foods 2 LLC (Defendant) the franchiser. In an attempt to curb labor costs Defendant decided that the assistant manager position should no longer be an hourly paid position but become a salaried position.

11.

At first the position was offered to Sigida at an annual rate of $19,000.00 with a forty hour work week expectation and remaining behind until her shift was properly ended i.e. that is her relief has arrived, her drawers had been counted, employees who had called out were replaced and preparations for the other shift were completed. This, Sigida was told,  would require at most, an additional five hours per week. As this was less than Sigida was making at her hourly rate, she declined the position.

12.

A month or so later a young lady by the name of Priscilla was hired for the position and was offered $26,000.00. Sigida was allowing Priscilla to informally shadow her to learn the duties of the position when Priscilla's employment was

5

terminated for, among other things, failure to attend work, failure to inform the

general manager when she was not on time or totally failed to show up, inability to

grasp the policies and procedures of the restaurant and insubordination.

13.

In July of 2012, the position was once again offered to Sigida at the

$26,000.00 paid to Priscilla with the forty hour work week and an expectation that

she would spend, at most, an extra five hours per week at work because of her

additional responsibilities. Plaintiff Wife was also advised that with the new bonus

structure, the bonus would also compensate for any additional time spent at work.

14.

Over the first few months Sigida  noted she was regularly scheduled for a

fifty hour work week which essentially meant she spent fifty-five hours each week

in the restaurant. Sigida inquired of the general manager why she was working so

many hours ? She was advised it was only because they were in the midst of

training the team why she was being scheduled for fifty hours each week and as

soon as the team lead was ready she would be working a forty hour work week.

15.

On an average day Sigida spent approximately 30 minutes doing

administrative work, counting drawers, entering sales, waste and purchases into

pre-designed spread sheets. The rest of the day was spent preparing food, running the cash register, serving customers, putting away purchases, counting stock, cleaning, washing dishes, clearing tables, emptying trash, throwing out waste and cleaning bathrooms.

16.

On an average day Cameron Jacques spent approximately 30 minutes doing administrative work, counting drawers, entering sales, waste and purchases into pre-designed spread sheets. The rest of the day was spent preparing food, running the cash register, serving customers, putting away purchases, counting stock, cleaning, washing dishes, clearing tables, emptying trash, throwing out waste and cleaning bathrooms.

17.

On an average day Christopher Colgate spent approximately 30 minutes doing administrative work, counting drawers, entering sales, waste and purchases into pre-designed spread sheets. The rest of the day was spent preparing food, running the cash register, serving customers, putting away purchases, counting stock, cleaning, washing dishes, clearing tables, emptying trash, throwing out waste and cleaning bathrooms.

18.

Cameron Jacques was paid $9.50/hour and was paid an overtime premium of an additional $4.75/hour when he worked over forty hours per week. Thus, should Mr. Jacques work the same number of hours as Sigida he would make a gross wage of $593.75.

19.

Christopher Colgate was paid $10.00/hour and was paid an overtime premium of an additional $5.00 per hour when he works over forty hours per week. Thus, should Mr. Colgate work the same number of hours as Sigida he would make a gross wage $625.00.

20.

Sigida made a flat wage of $525.00/ week a $100.00 less than Mr. Colgate would make and $68.75 less than Mr. Jacques.

21.

Sigida, Mr. Jacques, and Mr. Colgate performed the same job, for the same employer, in the same establishment that required substantially equal skill, effort and responsibility, under the same working conditions. The only reason Sigida was paid less than her counterparts was because she was female.

22.

Over a period of approximately two years and three months Defendants

8

misled Sigida as to why it was necessary for her to work fifty-five to sixty hours in a week. At first it was to afford them the opportunity to get a fully trained team in place; after they had promoted Mr. Jacques to assistant manager it became, "they were grooming Sigida for a general manager spot"; next they were going to terminate Thomas Layton , the general manager, and promote her. Once Mr. Layton was terminated and the old general manager was reinstated in the position, Sigida realized she was being misled. At this point she began to demand to be scheduled for the hours promised or be paid for her overtime.

23.

Defendants then directed Sigida to the loaf manual which contained their policies. Specifically a policy which required the general manager to place the most trusted employee on salary. Schedule him/her for fifty hours per week and avoid paying him/her overtime. Realizing she had been denied her overtime pay based on Defendants' mendacity, Sigida sued Defendants in the United States District Court for the Northern District of Georgia to recover her overtime pay.

24.

Defendants then began to retaliate against Sigida in a manner which caused extreme emotional distress. This began with Defendant through its general manager advising employees that Sigida would be "gone soon", indicating a desire

9

to terminate Sigida. Suddenly Sigida was placed in a position where she had to be perfect, but also account for the imperfection of others. This coupled with the fact that the  then general manager was a habitual drunkard, who when intoxicated would call the store several times an hour, curse out employees, cause them to quit mid-shift, berate Sigida on the phone made Sigida's life a living hell. Sigida was unable to sleep properly, was continuously anxious, agitated and in fear.

25.

Defendants then promoted the catering manager to general manager, she made it clear very early on she intended to complete the process of getting rid of Sigida. Initially she began to insinuate that Sigida was "stand-offish", failed to help with managing the store, and should leave if she didn't want the job. When that did not work she began to write up Sigida for fictitious violations of policies. One example is after claiming Sigida would not help with managing the store, Sigida informed her she was performing her normal daily duties and if she expected more she would have to request it. At this point the general manager created a list of job duties for Sigida. While she was handing Sigida her list of job duties, she informed her she would be issued a written warning for failing to input invoices in the system. Sigida informed the general manager she had not been requested to perform this task, at which point the manager took the list of duties

10

back and penciled in inputting invoices as a part of Sigida's job duties. The

manager then wrote Sigida a warning for failing to perform this job duty.

26.

This behavior by Defendants caused Sigida further extreme emotional

distress, causing Sigida to seek professional help to deal with her anxiety,

agitation and sleeplessness.

27.

On January 19, 2012 Sigida gave birth to a pre-mature baby boy. During the

entire period Sigida worked as a salaried assistant manager Irving was left to raise

this child on his own. Sigida was unable to perform normal household chores,

intimacy and be a companion to Irving. This loss of consortium caused their

marriage to deteriorate to an extent to be determined by the fair and impartial

conscience of a jury.

## CLAIMS FOR RELIEF

### Count I (Violation of the Equal Pay Act)

28.

Plaintiffs  reassert and re-allege the allegations set forth in paragraphs 1

through 27 above, excepting those paragraphs that are inconsistent with this cause

of action brought pursuant to the Equal pay Act.

11

29.

29 U.S.C. § 206(d) provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex:

Provided,

   That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

30.

By paying Cameron Jacques, a male, and Christopher Colgate, a male, in such a manner that they earned more than Sigida, a female, Defendants violated the EPA.

31.

Plaintiffs demand damages in an amount equal to the amount of wages lost over the period applicable to this suit, and an equal amount in liquidated damages.

12

This amount will be proven at trial.

### Count II (Intentional Infliction of Emotional Distress)

32.

Plaintiffs  reassert and re-allege the allegations set forth in paragraphs 1 through 31 above, excepting those paragraphs that are inconsistent with this cause of action for the intentional infliction of emotional distress.

33.

Under Georgia law, "the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one." Metropolitan Atlanta Rapid Transit Auth. v. Mosley, 280 Ga.App. 486, 490-491(3), 634 S.E.2d 466 (2006) (citation and punctuation omitted); In assessing whether conduct is sufficiently outrageous to support an intentional infliction of emotional distress claim, we have found that conduct which occurs in the context of the victim's employment "`may produce a character of outrageousness that might otherwise not exist.'" Fayette Family Dental Care, 312 Ga.App. at 232, 718 S.E.2d 88, quoting Bridges v. Winn-Dixie Atlanta, 176 Ga.App. 227, 230(1), 335 S.E.2d 445 (1985). This rule results from the fact that the workplace "presents a hierarchy of structured

relationships which cannot easily be avoided" and thereby "provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition." Coleman v. Housing Auth. of Americus, 191 Ga.App. 166, 169(1), 381 S.E.2d 303 (1989) And where a defendant has engaged in a series of acts or a pervasive pattern of conduct allegedly causing emotional distress, we must view the defendant's acts cumulatively, rather than individually, when assessing their extreme and outrageous nature. See Ferman v. Bailey, 292 Ga.App. 288, 291(2)(a), 664 S.E.2d 285 (2008)

34.

Defendants by threatening Sigida's employment, taking constructive steps to terminate Sigida's employment, encouraging other employees to compete for Sigida's position, all in retaliation for Sigida enforcing her legal right to overtime compensation intentionally inflicted emotional distress on Sigida.

35.

Plaintiff demands compensatory damages in an amount to be determined by the conscience of a fair and impartial jury.

### Count III (Loss of Consortium)

36.

Plaintiffs reassert and re-allege the allegations set forth in paragraphs 1

through 35 above, excepting those paragraphs that are inconsistent with this cause of action for the intentional infliction of emotional distress.

37.

At the time of the incident Complained of in Plaintiffs' Complaint, the Plaintiffs were married and that the Plaintiffs continue to be married.

38.

As a result of the intentional and wrongful acts of the Defendants, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

39.

That all aforesaid injuries and damages were caused solely and proximately by the intentional acts of the Defendants.

40.

Plaintiffs, jointly as husband and wife, demand judgment against the Defendants, jointly and severally in an amount to be determined by the conscience of a fair and impartial jury.

**Count IV (Punitive Damages)**

41.

15

Plaintiffs  reassert and re-allege the allegations set forth in paragraphs 1 through 40 above, excepting those paragraphs that are inconsistent with this cause of action for punitive damages.

42.

Bake One Inc., and Munroe Foods 2 LLC d/b/a Atlanta Bread Company acted intentionally when they decided Sigida was the most trusted employee and should be placed on salary to avoid paying her overtime, misled Sigida to convince her to work additional hours without overtime compensation, paid her less than they paid her male counterparts for substantially similar work, mounted a campaign to terminate her employment when she asserted her rights and took constructive steps to terminate her employment. This behavior shows the kind of willful misconduct, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences. Accordingly, Plaintiffs are entitled to an award of punitive damages pursuant to O.C.G.A. § 51-12-5.1.

WHEREFORE, Plaintiffs pray for the following relief:

1.     That Summons and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

16

2.   That Plaintiffs have a TRIAL BY JURY of all issues so triable;

3.   That Sigida recovers from Defendant an amount equal to the difference between her wages and that of her male comparators over the applicable legal period;

4.   That Sigida recovers from Defendant an amount in liquidated damages equal to the amount recovered as the difference between her wages and that of her male comparators;

5.   That Sigida recovers from Defendant compensatory damages in an amount to be determined by the conscience of a fair and impartial jury for Defendants intentional infliction of emotional distress on her;

6.   That Plaintiffs recover from Defendants compensatory damages in an amount to be determined by the enlightened conscience of a fair an impartial duties for their loss of consortium claim;

7.   That Plaintiffs recover from Defendant punitive damages in an amount to be determined by the conscience of a fair and impartial jury;

8.   That the Plaintiffs have and recover all damages to which they are entitled under federal and Georgia law; and

9.   That Plaintiffs have all such and other relief as this Court deems just

and appropriate.


Respectfully submitted this 6th day of April, 2016

By _____

Anna N. Sigida and Dale M. Irving

1911 Grayson Highway

Suite 8-109

Grayson, GA 30017

(404) 401-2172

allurom@yahoo.com

18

## Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

To: Anna N. Sigida and Dale M. Irving

    1911 Grayson Highway

    Suite 8-109

    Grayson, Georgia 30017

    I acknowledge receipt of your request that I waive service of a summons in the action of Anna N. Sigida and Dale M. Irving v. Munroe Foods 2 LLC doing Business as Atlanta Bread Company and Bake One Inc.,which is case number16-A-03472-8  in the Superior Court of the State of Georgia in and for the County of Gwinnett. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me. I understand that I am entitled to consult with my own attorney regarding the consequences of my signing this waiver. I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by the Georgia Rules of Civil Procedure. I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons. I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer is not served upon you within 60 days after the date this waiver was sent, or within 90 days after that date if the request for the waiver was sent outside the United States. This _____ day of _____, _____.


_____

Michelle W. Johnson Attorney for Munroe Foods 2 LLC

To: Anna N. Sigida and Dale M. Irving

    1911 Grayson Highway

    Suite 8-109

    Grayson, Georgia 30017

    I acknowledge receipt of your request that I waive service of a summons in the action of Anna N. Sigida and Dale M. Irving v. Munroe Foods 2 LLC doing Business as Atlanta Bread Company and Bake One Inc.,which is case number16-A-03472-8  in the Superior Court of the State of Georgia in and for the County of Gwinnett. I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me. I understand that I am entitled to consult with my own attorney regarding the consequences of my signing this waiver. I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by the Georgia Rules of Civil Procedure. I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons. I understand that a judgment may be entered against me (or the entity on whose behalf I am acting) if an answer is not served upon you within 60 days after the date this waiver was sent, or within 90 days after that date if the request for the waiver was sent outside the United States. This _____ day of _____, _____.

_____

Michelle W. Johnson Attorney for Munroe Foods 2 LLC