## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is hereby entered into by and between Anna Sigida ("Sigida") and Dale Irving ("Irving") (collectively, "Plaintiffs") on the one hand, and Munroe Foods 2 LLC d/b/a Atlanta Bread Company ("Munroe Foods") and Bake One, Inc. ("Bake One") (collectively, "Defendants"), on the other hand, as of May __, 2018. The Plaintiffs and Defendants are referred to herein individually as a "Party," and collectively, as the "Parties." As used herein, the phrases "this Agreement," "hereto," "hereunder," and phrases of like import shall mean this Agreement. All capitalized terms shall have the meanings ascribed to them in the Agreement.

WHEREAS, Sigida was employed as a salaried Assistant Manager at an Atlanta Bread Company location in Snellville, Georgia operated by Munroe Foods from July 2012 until December 2015;

WHEREAS, on December 15, 2014, Plaintiffs filed a Complaint against Defendants in the United States District Court for the Northern District of Georgia (the "Court") captioned as *Anna N. Sigida and Dale M. Irving v. Munroe Foods, et al.*, Case No. 1:14-cv-3968-RWS, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA");

WHEREAS, on May 18, 2015, Plaintiffs filed an Amended Complaint in Case No. 1:14-cv-3968-RWS, adding claims for intentional infliction of emotional distress, loss of consortium, unjust enrichment/quantum meruit, and punitive damages, and on October 16, 2015, sought leave to add a retaliation claim, which was granted ("Sigida I");

WHEREAS, on April 6, 2016, Plaintiffs filed a Complaint against Defendants in the Superior Court of Gwinnett County, Georgia, captioned as *Anna N. Sigida and Dale M. Irving v. Munroe Foods, et al.*, Case No. 16 A03472-8, which Defendants removed to this Court on May 6, 2016, and such case is now known as Case No. 1:16-cv-01473-RWS, and alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"), as well as state law claims for intentional infliction of emotional distress, loss of consortium and punitive damages ("Sigida II") (collectively, the "Litigation");

WHEREAS, following the Court's rulings on the Parties' motions for summary judgment the only remaining claims before this Court in the Litigation are Sigida's FLSA claim and EPA claim;

WHEREAS, Defendants deny Plaintiffs' claims and allegations in the Litigation and deny liability to Plaintiffs; and

WHEREAS, the Parties desire to finally and forever resolve all disputed matters between them existing as of the date of this Agreement, whether or not raised in the Litigation; and

WHEREAS, the Parties have entered into this Agreement to bring about such resolution;

NOW, THEREFORE, the Parties, with the intent of totally ending and forever foreclosing all matters or potential matters in dispute between the Parties up to the time of this Agreement, thereby assuring peace between the Parties based on such matters, in return for the mutual promises

and consideration contained herein, the sufficiency of which is expressly acknowledged, agree as follows:

1. **Settlement Payment.** Provided that Plaintiffs execute this Agreement and the Court has approved the settlement, Defendants shall pay Plaintiffs the gross sum of fifty-five thousand dollars ($55,000.00), less applicable taxes, withholdings or deductions (the "Settlement Payment"), which shall be paid as follows:

(i) The sum of twenty-five thousand dollars ($25,000.00) shall constitute the entire amount payable for Sigida's claims arising under the FLSA and EPA, which claims were asserted in the Litigation, including payment for any alleged unpaid wages (including overtime compensation), back pay, interest, and any similar forms of relief Plaintiffs may have sought in the Litigation. Defendants shall deduct applicable taxes, withholdings and deductions from these amounts in accordance with Sigida's latest issued W-4, and shall include this amount on a Form W-2 issued to Sigida at year-end.

(ii) The sum of twenty-five thousand dollars ($25,000.00) shall constitute the entire amount payable to Sigida for alleged liquidated damages she may have sought with respect to her FLSA and EPA claims in the Litigation. Defendants shall not deduct any taxes, withholdings or deductions from this portion of the Settlement Payment, and shall record this amount on Forms 1099 issued to Plaintiffs at year-end.

(iii) The sum of five thousand dollars ($5,000.00) shall constitute the entire amount payable for Plaintiffs' Released Claims, as that term is defined in Section 3. Defendants shall not deduct any taxes, withholdings or deductions from this portion of the Settlement Payment, and shall record this amount on Forms 1099 issued to Plaintiffs at year-end.

(iv) The Settlement Payment shall be paid as follows. Within five (5) business days after court approval of the Settlement Payment, Defendants shall pay Plaintiffs ten thousand dollars ($10,000.00) (the "First Payment") paid via two (2) checks in the amount of five thousand dollars ($5,000.00) each to Anna Sigida and Dale Irving. Defendants shall not deduct any taxes, withholdings, or deductions from this portion of the Settlement Payment, and shall record this amount on Forms 1099 issued to Plaintiffs at year-end. Beginning thirty (30) days after the First Payment, the other forty-five thousand dollars ($45,000.00) shall be paid at the rate of five thousand dollars ($5,000.00) per month for nine (9) months. Twenty thousand dollars ($20,000.00) shall not be subject to taxes, withholdings, or deductions; and twenty-five thousand dollars ($25,000.00) shall be subject to deductions in accordance with Sigida's latest issued W-4.

2. **Acknowledgments Regarding Settlement Payments.** Plaintiffs assume full responsibility to all federal, state and local taxing authorities and agree to indemnify and hold Defendants or any entities or individuals affiliated with Defendants harmless from any and all tax consequences, including interest, penalties, fines or attorney's fees, arising out of the

payment of the Settlement Payment. The Settlement Payment is the total and sole consideration to be paid by Defendants to Plaintiffs for this Agreement and includes all costs and attorney's fees. It is expressly understood that the Settlement Payment is paid to and accepted by Plaintiffs in full settlement of all alleged damages arising out of the subject matter of this Agreement, whether known or unknown and whether or not ascertainable at the time of the execution of this Agreement. Plaintiffs also understand that their entitlement to and retention of the benefits mentioned herein are expressly conditioned upon Plaintiffs' fulfillment of the promises herein.

3. **General Release.** In further consideration of the foregoing, Plaintiffs hereby knowingly and voluntarily release and forever discharge, both jointly and severally, Defendants, Defendants' corporate subsidiaries, parents and affiliates, including but not limited to Europan Inc., Atlanta Bread Company International, Inc., GI Bakery Inc., and Munroe Foods Holdings LLC, and their current and former officers, directors, employees, shareholders, attorneys, servants, agents, representatives and insurers, together with their predecessors, successors and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "Released Claims"), whether known or unknown, which Plaintiffs ever had, now have, or may or might in the future have against the Releasees, arising out of events or occurrences arising at or before the moment Plaintiffs sign this Agreement, including, but not limited to: (i) those claims which were or could have been asserted in the Litigation; (ii) those claims arising under the FLSA; (iii) those claims arising under Title VII of the Civil Rights Act of 1964; (iv) those claims arising under 42 U.S.C. § 1981; (v) those claims arising under the Civil Rights Act of 1991; (vi) those claims arising under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008; (vii) those claims arising under the Rehabilitation Act of 1973; (viii) those claims arising under the Equal Pay Act of 1963; (ix) those claims arising under the Genetic Information Nondiscrimination Act of 2008; (x) those claims arising under the Family and Medical Leave Act of 1993 ("FMLA"); (xi) those claims arising under the National Labor Relations Act, as amended by the Labor-Management Relations Act ("NLRA"); (xii) those claims arising under the Employee Retirement Income Security Act of 1974; (xiii) those claims arising under the Worker Adjustment and Retraining Notification Act of 1988; (xiv) those claims arising under any other federal or state fair employment practices or wage and hour statute, or any ordinance promulgated by any county, municipality, or other state or federal subdivision; (xv) those claims for retaliatory or wrongful discharge of any kind; (xvi) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xvii) those claims for breach of contract (express or implied, in fact or in law, oral or written), or any duty or implied covenant of good faith and fair dealing; (xviii) those claims for breach of fiduciary duty, fraud, misrepresentation, breach of right of privacy, libel, slander, defamation or tortious conduct of any kind; (xix) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xx) those claims arising from or in reliance upon any statute, regulation, rule or ordinance (local, state or federal); (xxi) any and all other claims arising under law or in equity; and (xxii) any and all other claims which Plaintiffs ever had, now have, or may or might in the future have arising by reason of or in any way connected with any relationship which may have existed prior to or on the date hereof between Plaintiffs and Defendants, the termination of that relationship, or the decision to terminate that relationship, provided, however, that this Agreement does not waive rights or claims that may arise after the date the Agreement is executed.

     a.    Plaintiffs warrant that they have not filed or assigned or transferred to any other person any claim released in this Section. In the event of such filing, assignment, or transfer, Plaintiffs agree to indemnify and hold harmless the Releasees from and against any liability, loss, cost (including, attorney's fees), expense, settlement, or judgment arising out of such filing, assignment, or transfer.

     b.    Plaintiffs further acknowledge and covenant that, in consideration for the agreements and commitments set forth herein, Plaintiffs have knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to them, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for backpay or front pay, compensatory damages, punitive damages, liquidated damages, expense reimbursement, reinstatement and recovery of attorney's fees.

     c.    Plaintiffs further acknowledge and covenant that, in consideration for the agreements and commitments set forth herein, Plaintiffs have knowingly relinquished, waived and forever released any appeal rights that they would have in the Litigation.

    4.    **Covenants Not to Sue.** Plaintiffs further acknowledge and covenant not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by them herein.

    A "covenant" not to sue is a legal term that means a party promises not to file a lawsuit against another in court. It is different from the General Release of claims contained in Section 3 of this Agreement. In exchange for the consideration described in Section 1 and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Plaintiffs further agree never to sue any of the Releasees for any of the Released Claims. Plaintiffs also agree that they will not join or consent to opt into any certified or conditionally-certified class or collective action, or any other multi-party litigation, against any Releasee involving any of the Released Claims. Likewise, Plaintiffs agree that they will opt-out or otherwise withdraw from any such litigation to which they become a member or participant.

    If Plaintiffs violate this covenant by suing any of the Releasees for any Released Claims, Plaintiffs shall be liable to such Releasees as are party to such lawsuit for their reasonable attorney's fees and other litigation costs incurred in defending against such lawsuit.

    Nothing in this Section 4 shall apply to prohibit Plaintiffs from suing to enforce the terms of this Agreement. Nothing in this Section 4 precludes or restricts Defendants from seeking any and all damages, injunctive relief, or other remedies against Plaintiffs for violation of any section of this Agreement. Plaintiffs acknowledge and agree that the covenant not to sue in this Section 4 is an essential and material term of this Agreement without which the Parties could not have reached a

settlement. Plaintiffs affirm that they understand and acknowledge the significance and consequence of this Section 4.

5. **Settlement Approval.** Within five (5) days after this Agreement is fully executed, the Parties shall cause to be completed, executed and filed in the Litigation a Joint Motion for Settlement Approval, consistent with this Agreement and in the form attached hereto as Exhibit A. Until all payments are made, the Court shall retain jurisdiction of the Litigation for the purpose of enforcing the terms of this Agreement.

6. **Waiver of Reemployment.** Plaintiffs covenant that they will never knowingly apply for or accept employment with Defendants or Releasees, or their corporate subsidiaries, parents, or affiliates. Plaintiffs acknowledge and agree that in the event that they apply for employment with any of these entities, such application shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for any refusal to hire them. Plaintiffs further acknowledge and agree that in the event that they are mistakenly hired by any of these entities, such acceptance of employment shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for their termination, without cause, without notice, and without recourse available to them against these entities. Plaintiffs further agree that they will not assert, file or prosecute any charge or claim against Defendants or Releasees or their corporate subsidiaries, parents, or affiliates based on this Section.

7. **Denial of Wrongdoing.** It is further understood and agreed that the payment and benefits conferred herein are not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

8. **Non-Admission.** This Agreement is entered into solely in order to compromise and settle disputed claims, without any acquiescence, acknowledgement, or agreement by any Party as to the merit of any actions, causes of action, suits, debts, dues, sums of money, accounts, damages, expenses, attorney's fees, costs, punitive damages, penalties, judgments, claims or demands released herein. Neither this Agreement nor any part thereof shall be, or be used as, evidence or an admission of liability by anyone, at any time, for any purpose. Nothing in this Section or this Agreement shall be construed to prohibit a Party from using this Agreement as evidence of the terms of the Parties' agreement in a suit to enforce this Agreement.

9. **Basis for Settlement.** Each Party acknowledges and agrees that the terms of this Agreement are, and have been agreed to, for their mutual convenience, in part to avoid the expense, distraction, risk and uncertainty of further litigation, and after considering the risks of litigation and the circumstances of their respective businesses. Each Party also acknowledges and agrees that he, she, or it has relied entirely on his, her, or its own judgment, belief and knowledge (including his, her, or its judgment, belief and knowledge with respect to the foregoing, the extent and duration of the claimed damages in the Litigation, and the value of settling the Litigation at this time) and has had the opportunity to seek the advice and recommendations of independently selected counsel, and, accordingly, except as set forth herein, neither he, she, it nor anyone acting on his, her, or its behalf shall (or shall have the right to) deny or challenge the validity of this Agreement or any of the obligations of the Parties hereunder.

10. **Construction.** This Agreement has been negotiated by the Parties and shall be interpreted fairly in accordance with its terms and without any construction in favor of or against any of the Parties. The interpretation and construction of this Agreement shall be subject to the following provisions: (a) words importing the singular meaning include where the context so admits the plural meaning and vice versa; (b) the terms "and" and "or" as used herein shall mean both the conjunctive and the disjunctive, so that one word or the other may be taken accordingly as the one or the other (i.e., "and/or"); (c) the word "any" shall mean "all" or "one out of several"; (d) references to any person shall include natural persons and partnerships, firms and other incorporated bodies and all other legal persons of whatever kind and however constituted; (e) the words "include," "includes" and "including" are to be construed as if they were immediately followed by the words "without limitation"; and (f) captions and headings used herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement.

11. **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, administrators, conservators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through them based or founded upon any of the claims released herein.

12. **Waiver.** Failure by any Party to insist upon strict performance of any provision herein by any other Party shall not be deemed a waiver by such Party of its rights or remedies or a waiver by it of any subsequent default by such other Party, and no waiver shall be effective unless it is in writing and duly executed by the Party entitled to enforce the provision being waived.

13. **Severability.** In the event that any term, covenant, condition, agreement, section or provision hereof shall be deemed invalid or unenforceable, this Agreement shall not terminate or be deemed void or voidable, but shall continue in full force and effect and there shall be substituted for such stricken provision a like but legal and enforceable provision which most nearly accomplishes the intention of the Parties hereto.

14. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties regarding the subject matter set forth herein, and all prior statements, negotiations, representations or warranties are expressly merged herein. Except as set forth in this Agreement, no Party has relied upon the representations of any other Party to induce them to enter into this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of the Parties.

15. **Choice of Law and Forum Selection.** This Agreement will be interpreted under and is governed by the laws of the State of Georgia without regard to conflicts of laws principles. The Parties (a) hereby irrevocably submit themselves to and consent to the exclusive jurisdiction of the Court (or, if the Court lacks jurisdiction, the state courts of Georgia) for the purposes of any action, claim, suit or proceeding arising from or relating to this Agreement, and (b) hereby waive, and agree not to assert, by way of motion, as a defense or otherwise, in any such action, claim, suit or proceeding, any argument that he, she, or it is not personally subject to the jurisdiction of such court(s), that the action, claim, suit or proceeding is brought in an inconvenient forum, or that the venue of the action, claim, suit or proceeding is improper.

16. **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall constitute an original. Facsimile or electronic signatures shall be treated as originals.

The undersigned acknowledge that they have read and understand the foregoing Settlement Agreement and General Release, and that the undersigned agree to the same and voluntarily execute the same this 7th day of May, 2018.

Anna Sigida

_____
Signature

5/7/18
_____
Date


Dale Irving

_____
Signature

05/07/2018
_____
Date

The undersigned acknowledges that its authorized signatory has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this _____ day of May, 2018.

MUNROE FOODS 2, LLC

_____
Signature

BASIL COUVARAS
Print Name

_____
Title

5/8/2018
Date

The undersigned acknowledges that its authorized signatory has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this _9th_ day of May, 2018.

BAKE ONE, INC.

_[signature]_
Signature

_Andrew L. Wilson_
Print Name

_Chief Operating Officer_
Title

_5/9/18_
Date